**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | : | |
| **DAVID M. OATES, RICHARD** | : | **Lead Case:** |
| **STAPLEMAN, AND JESSE WEBB,** | : | **Civil Action No.: 4:15-cv-01727** |
| **individually and on behalf of all persons** | : | |
| **similarly situated,** | : | **Consolidated Cases:** |
| | : | **Civil Action No.: 4:17-cv-01857** |
| **Plaintiff,** | : | **Civil Action No.: 4:17-cv-01858** |
| | : | |
| **v.** | : | |
| | : | |
| **QUALITY INTEGRATED SERVICES, INC.** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED**
**MOTION FOR FINAL APPROVAL OF THE SETTLEMENT AGREEMENT AND**
<u>**ATTORNEYS' FEES AND COST**</u>

## **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................ 1

II.  PROCEDURAL HISTORY.............................................................................. 3

    A.  The Notice Provisions In The Settlement Agreement Have Been Satisfied.......... 3

    B.  Response From Class Members.................................................................... 5

III.  DISCUSSION .................................................................................................. 6

    A.  Applicable Legal Standard......................................................................... 6

        1.  Legal Standard For Approval Of FLSA Settlements................................. 6

        2.  Legal Standard For Final Approval Of Class Action Settlement Pursuant To FED. R. CIV. P. 23 ........................................................................... 7

    B.  The Terms Of The Proposed Settlement Are Fair And Reasonable Resolving A *Bona Fide* Dispute .......................................................................... 7

        1.  A *Bona Fide* Dispute Existed Between The Parties ................................. 8

        2.  The Proposed Settlement Agreement Is Fair And Reasonable .................. 9

        3.  The Allocation Formula Is Fair And Reasonable .................................... 10

        4.  The Settlement Class Members' Response Supports The Settlement ...... 12

    C.  The Proposed Settlement Furthers The Purpose Of The FLSA........................... 13

    D.  The Settlement Satisfies The Relevant Criterion For Rule 23 Approval.............. 13

        1.  The Opinion Of Experienced Counsel Supports Approval Of The Settlement, Which Resulted From Arm's-Length Negotiations By Informed And Experienced Counsel......................................................... 13

        2.  The Complexity, Expense, And Likely Duration Of The Litigation, As Well As The Stage Of The Proceedings And The Amount Of Discovery, Favor Approval Of The Settlement.......................................................... 14

        3.  The Likelihood Of Success On The Merits And The Range Of Possible Recovery Favor Approval Of The Settlement ......................................... 15

    E.  The Court Should Finally Certify the State Settlement Classes  Under Fed. R. Civ. P. 23 .................................................................................... 16

        1.  The Settlement Classes Are Sufficiently Numerous................................ 17

i

2.     The State Settlement Classes Seek Resolution Of Common Questions ... 17

3.     The Claims Of The Named Plaintiffs Are Typical Of The Class ............ 18

4.     Class Counsel and Plaintiffs Meet The Adequacy Requirements of the Classes ................................................................................................ 18

5.     The Classes Satisfy The Predominance And Superiority Requirements Of FED. R. CIV. P. 23(b)(3) ............................................................ 18

F.     The Notice Provisions Were Followed And Provided Adequate Notice To The Classes That Satisfies Due Process ...................................................... 19

G.     The Additional Service Awards To Named Plaintiffs Are Justified And Should Be Approved ................................................................................................ 20

H.     The Request For Attorneys' Fees And Costs Should Be Finally Approved ......... 23

1.     The Fee Shifting Provisions Of The FLSA And Pennsylvania And Washington Wage Laws Provide For The Award Of Attorneys' Fees .... 23

2.     Time And Labor Required ........................................................ 25

3.     Novelty And Difficulty Of Question Presented By The Case, As Well As The Skill Required To Perform The Legal Service Properly ................... 26

4.     Customary Fee ........................................................................ 26

5.     Whether The Fee Is Fixed Or Contingent ................................. 28

6.     Any Time Limitations Imposed By The Client Or Circumstances ........... 29

7.     Amount Involved And Results Obtained ................................... 29

8.     Experience, Reputation, And Ability Of The Attorneys .......................... 30

9.     The Undesirability Of The Case ............................................... 30

10.    Nature And Length Of The Professional Relationship With The Client .. 31

11.    Awards In Similar Cases .......................................................... 31

I.     Class Counsel's Costs Should Be Approved ........................................ 32

IV.    CONCLUSION ................................................................................ 33

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*All Plaintiffs v. All Defendants*,
   645 F.3d 329 (5th Cir. 2011) ................................................................. 7

*Aron v. Crestwood Midstream Partners LP*, No. 4:15-cv-1367,
   2016 U.S. Dist. Lexis 152427, at *9 (S.D. Tex. Oct. 14, 2016) ................................ 8

*Atlier v. Worley Catastrophe Response, LLC*,
   Nos. 11–241, 11–242, 2012 WL 161824 (E.D. La. Jan. 18, 2012) ..................... 8, 21

*Blum v. Stens*on,
   465 U.S. 886 (1984)……………………………………………………………………...25

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)......................................................................... 25

*Bozak v. FedEx Ground Package Sys., Inc.*,
   No. 3:11–cv–00738–RNC, 2014 WL 3778211 (D. Conn. July 31, 2014) .............................. 22

*Brooklyn Sav. Bank v. O'Neil*,
   324 U.S. 697 (1945)......................................................................... 13

*Bryant v. United Furniture Indust., Inc.*,
   No. 1:13CV246–SA–DAS, 2017 WL 639320 (N.D. Miss. Feb. 16, 2017) ..................... 27, 32

*Camp v. Progressive Corp.*,
   No. Civ. A. 01–2680, Civ. A. 03–2507, 2004 WL 2149079 (E.D. La. Sept. 23, 2004)..... 21, 22

*Cardizem CD Antitrust Litig.*,
   210 F.R.D. 508 (E.D. Mich. 2003) ........................................................ 32

*Carrabba v. Randalls Food Mkts., Inc.*,
   191 F. Supp. 2d 815 (N.D. Tex. 2002) ................................................... 21

*Chaverria v. New York Airport Serv., LLC*,
   875 F. Supp. 2d. 164 (E.D.N.Y. 2012) .................................................. 10

*Cimarron Pipeline Const., Inc. v. Nat'l Council on Comp. Ins.*,
   Nos. CIV 89–822–T, CIV 89–1186–T, 1993 WL 355466 (W.D. Okla. June 8, 1993)............ 27

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
   No. CIV. 6:12-1609, 2015 WL 965696 (W.D. La. Mar. 3, 2015)............................ 28

*Cormier v. C & S Wireline Servs., L.L.C.*,
   No. 13–cv–01649–PAB–CBS, 2015 WL 12803706 (S.D. Tex. July 15, 2015)........................ 8

*Craig v. Rite Aid Corp.*,
   No. 4:08-cv-2317, 2013 WL 84928 (M.D. Pa. Jan. 7, 2013) .................................................. 22

*Creed v. Benco Dental Supply Co.*,
   No. 3:12-CV-01571, 2013 WL 5276109 (M.D. Pa. Sept. 17, 2013)........................................ 22

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. 2007) ................................................................................... 21, 28

*Duncan v. JPMorgan Chase Bank, N.A.*,
   No. SA-14-CA-00912-FB, 2016 WL 4419472 (W.D. Tex. May 24, 2016)...................... 21, 22

*Dyson v. Stuart Petroleum Testers, Inc.*,
   No. 1-15-cv-282-RP, 2016 WL 815355 (W.D. Tex. Feb. 29, 2016)................................ *passim*

*Elliot v. Rolling Frito-Lay Sales, LP*,
   2014 WL 2761316 (C.D. Cal. June 12, 2014) ........................................................................ 22

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,
   137 F.R.D. 240 (S.D. Ohio 1991) ......................................................................................... 27

*Evans v. Jeff D.*,
   475 U.S. 717 (1986)............................................................................................................... 25

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)......................................................................................... 21

*Fry v. Hayt, Hayt & Landau*,
   198 F.R.D. 461 (E.D. Pa. 2000)............................................................................................ 17

*Henry v. Little Mint, Inc.*,
   No. 12-cv-3966, 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ............................................ 31

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)............................................................................................................... 25

*In re Abrams*,
   605 F.3d 238 (4th Cir. 2010) ................................................................................................ 28

*In re Actos (Pioglitazone) Prods. Liab. Litig.*,
   No. MDL No. 6:11-md-2299, 2017 WL 3033134 (W.D. La. July 17, 2017).......................... 24

*In re Am. Bank Note Holographics, Inc.*,
   127 F.Supp.2d 418 (S.D.N.Y. 2001)..................................................................................... 10

*In re Catfish Antitrust Litig.*,
   939 F. Supp. 493 (N.D. Miss. 1996)...................................................................................... 22

*In re Constar Int'l, Inc. Sec. Litig.*,
   585 F.3d 774 (3d Cir. 2009)............................................................................. 17

*In re Dell*,
   No. A–06–CA–726–SS, 2010 WL 2371834 (W.D. Tex. June 11, 2010)......................... *passim*

*In re Enron Sec. & ERISA Litig.*, No.,
   H-01-3624, 2003 WL 22494413 (S.D. Tex. July 24, 2003) .................................... 16

*In re Firstplus Fin. Grp., Inc. Sec. Litig.*,
   No. 3:98-CV-2551-M, 2002 WL 31415951 (N.D. Tex. Oct. 23, 2002)................................ 17

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................ *passim*

*In re OCA, Inc. Secs. & Deriv. Litig.*,
   No. 05-2165, 2009 WL 512081 (E.D. La. 2009) ...................................................... 24

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
   MDL No. 2328, 2016 WL 235781 (E.D. La. Jan. 20, 2016)................................... 12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998)........................................................................... 15

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
   No. 888, 1994 WL 202394 (E.D. La. May 18, 1994)............................................. 28

*Jones v. JGC Dallas, LLC*,
   No. 3:11-cv-2743-O, 2014 WL 7332551 (N.D. Tex. Nov. 12, 2014) ...................... 7

*King v. Allegiance Mgmt., LLC*,
   No. A–09–CA–317 LY, 2010 WL 3703066 (W.D. Tex. Sept. 15, 2010) ............................. 23

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) ............................................................. *passim*

*Lynn's Food Stores, Inc. v. U.S.*,
   679 F.2d 1350 (11th Cir. 1982) .................................................................... 6

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ....................................................................... 19

*Martinez v. Bohls Bearing Equip. Co.*,
   361 F. Supp. 2d 608 (W.D. Tex. 2005)............................................................ 8

*McLaughlin v. Richland Shoe Co.*,
   486 U.S. 128 (1988)................................................................................... 9

*McNeely v. Nat'l Mobile Health Care, LLC*,
No. CIV-07-933-M, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ..................................... 23

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ............................................................................................................... 19

*Oh v. AT&T Corp.*,
225 F.R.D. 142 (D.N.J. 2004) ........................................................................................... 32, 33

*Parker v. Anderson*,
667 F.2d 1204 (5th Cir. 1982) ............................................................................................ 9, 10

*Pliego v. Los Arcos Mexican Rests., Inc.*,
313 F.R.D. 117 (D. Colo. 2016) ............................................................................................ 11

*Raniere v. Citigroup, Inc.*,
310 F.R.D. 211 (S.D.N.Y. 2015) ........................................................................................... 22

*Reed v. General Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) ................................................................................................... 7

*Riddle v. Tex-Fin., Inc.*,
No. H-08-3121, 2011 WL 1103033 (S.D. Tex. Mar. 22, 2011) .............................................. 23

*Rodriguez v. Stage 3 Separation, LLC*,
No. 5:14-cv-00603-RP, 2015 WL 12866212 (W.D. Tex. Dec. 23, 2015)................................. 6

*Sand v. Greenberg*,
No. 08-cv-7840, 2011 WL 7842602 (S.D.N.Y. Oct. 6, 2011)................................................. 22

*Schwartz v. TXU Corp.*,
2005 WL 3148350 (N.D. Tex. Nov. 8, 2005).................................................................... 11, 24

*Scott v. Capital Fin. Servs., Inc.*,
277 F.R.D. 316 (S.D. Tex. 2011)............................................................................................ 20

*Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*,
No. 3:09-CV-0298-N, 2016 WL 8201334 (N.D. Tex. Aug. 30, 2016) .................................... 24

*Shaw v. Interthinx, Inc.*,
No. 13–cv–01229–REB–NYW, 2015 WL 1867861 (D. Colo. Apr. 22, 2015)....................... 32

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
91 F.Supp.2d 942 (E.D. Tex. 2000)........................................................................................ 22

*Sims v. Hous. Auth. City of El Paso*,
No. EP:10-cv-109-PRM, 2012 WL 10862119 (W.D. Tex. Feb. 29, 2012)................................ 7

*Slipchenko v. Brunel Energy*,
  No. H-11-1465 2015 WL 338358 (S.D. Tex. Jan. 23, 2015)...........................................7, 11, 14

*Steele v. Leasing Enter., Ltd.*,
  826 F.3d 237 (5th Cir. 2016) ....................................................................................23

*Stransky v. HealthONE of Denver, Inc.*,
  868 F. Supp. 2d 1178 (D. Colo. 2012) .............................................................29, 30

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011)......................................................................................21

*Turner v. Murphy Oil USA, Inc.*,
  472 F. Supp. 2d 830 (E.D. La. 2007) ......................................................................24

*Tuten v. United Airlines, Inc.*,
  41 F. Supp. 3d 1003 (D. Colo. 2014).......................................................................22

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) .............................................................................24, 26

*Vassallo v. Goodman Networks, Inc.*,
  No. 4:15-cv-97-LG-CMC, 2016 WL 6037847 (E.D. Tex. Oct. 25, 2016) ...........6, 16

*Vaszlavik v. Storage Tech. Corp.*,
  No. 95-B-2525, 2000 WL 1268824 (D. Colo. Mar. 9, 2000) ..................................27

*Vela v. City of Houston*,
  276 F.3d 659 (5th Cir. 2001) .............................................................................27, 31

*Wade v. Werner Trucking Co.*,
  No. 10 Civ. 270, 2014 WL 2535226 (S.D. Ohio June 5, 2014)...............................20

*Weiss v. York Hosp.*,
  745 F.2d 786 (3d Cir. 1984)......................................................................................16

*Wells v. Sullivan*,
  907 F.2d 367 (2d Cir. 1990)......................................................................................28

*Whittington v. Taco Bell of Am., Inc.*,
  No. 10–cv–01884–KMT–MEH, 2013 WL 6022972 (D. Colo. Nov. 13, 2013)................27, 32

## Statutes And Other Authorities

Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, *et seq.* ...............................*passim*

Fed. R. Civ. P. 23 ...........................................................................................*passim*

CONTE & NEWBERG at §§ 8.21 .......................................................................26

Manual for Complex Litigation (Fourth) § 14.121 (2010) .......................................................... 35

## I.      INTRODUCTION

These class and collective action wage and hour lawsuits against Defendant Quality Integrated Services, Inc. ("Defendant" or "QIS") have been settled, and Plaintiffs David M. Oates, Richard Stapleman, and Jesse Webb (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Final Approval of the Settlement Agreement and Attorneys' Fees and Costs.[1] The Court granted preliminary approval of this Settlement on September 6, 2017, and originally set a Fairness Hearing for October 13, 2017. (ECF No. 58.)  Pursuant to the Parties' Joint Motion to Continue the Final Approval Hearing, the Court moved the Final Approval Hearing to December 1, 2017. (ECF No. 61.) Now, after Court-approved Notice has been sent to Settlement Class Members, final approval of this settlement is appropriate. Pursuant to the terms of the Settlement Agreement, the Settlement Agreement is filed under seal. Accordingly, the publicly filed version of this brief is redacted, and a copy of the unredacted version will be submitted to the Court pursuant to the Court's Local Rules.

These consolidated cases allege violations of the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), Washington state law, and Pennsylvania state law. Specifically, Plaintiffs allege that Defendant had a policy and practice of failing to pay its Inspectors any overtime compensation in violation of FLSA and Pennsylvania and Washington state law.

Following the substantial exchange of informal discovery, including electronic and hardcopy payroll records and timesheets showing days worked and all forms of compensation received by the Plaintiffs and Class Members during the relevant time period; multiple pre-

---

[1]The Settlement Agreement is filed under seal. A publicly filed redaction version has been filed (ECF No. 57) and a copy of the un-redacted version has been submitted to the Court pursuant to the Court's Local Rules.

mediation conference calls; preparation and exchange of mediation statements; extensive arm's-length settlement negotiations; a full-day, in-person mediation session in Oklahoma City, Oklahoma before experienced mediator William H. Lemons; and extensive post-mediation arms'-length negotiations, the Parties entered into a Settlement Agreement to resolve this action. The Settlement includes a gross cash payment of ████████████████████████████ ████████ (the "Gross Settlement Amount"). ***None of the funds from the Gross Settlement Amount will revert to Defendant.*** See Settlement Agreement ¶ 20(a)(ii). This Gross Settlement Amount is fair, reasonable, and extremely beneficial to the members of the Settlement Class.

In exchange, the Plaintiffs and the Settlement Class Members will release all FLSA, state wage and hour law, and state common law claims that were or could have been asserted in their respective Complaints based on the facts alleged for alleged unpaid wages, overtime compensation, liquidated or other damages from January 27, 2013 to June 23, 2017 for the Plaintiffs, Opt-In Plaintiffs, and the Washington Class, or from April 15, 2012 to June 23, 2017 for the Pennsylvania Class. *Id.* ¶ ¶ 13(r); 14.

Consistent with the Order granting preliminary approval, the Court-approved Notice was mailed to 82 Settlement Class Members. *See* Declaration of Sarah R. Schalman-Bergen of Berger & Montague, P.C. ("Schalman-Bergen Decl.") ¶ 15; Declaration of Brian Manigault of the Angeion Group, LLC ("Manigault Decl.") ¶ 9. Each Notice advised the Settlement Class Members of the pre-tax minimum estimated amount he or she could expect to receive from the Settlement. Manigault Decl. ¶ 10. **As of November 13, 2017, (three days past the deadline for objections and exclusions) the Settlement Administrator and Class Counsel have received zero objections and zero requests for exclusion**. Schalman-Bergen Decl. ¶ 16; Manigault Decl. ¶ 12. All Eligible Class Members will receive a settlement award. *See* Schalman-Bergen Decl. ¶ 18. The

average value of the settlement awards is currently estimated to be approximately ███ per

person. Manigault Decl. ¶ 17.

The proposed Settlement Agreement satisfies all of the criteria for final approval under

federal law and is fair, reasonable, and adequate. Accordingly, the Plaintiffs request that the Court

issue an order:

1) Granting final approval of the proposed Settlement Agreement;

2) Granting final approval of the State Settlement Classes pursuant to Fed. R. Civ. P. 23;

3) Finally approving David M. Oates, Richard Stapleman, and Jesse Webb as the representatives of the Settlement Classes, and approving a ███ service award to each Plaintiff for their service to the Settlement Class and in exchange for their additional released claims in favor of Defendant;

4) Approving Berger & Montague, P.C. as Class Counsel for the Settlement Class; approving Plaintiffs' request for attorneys' fees in the amount of up to one-third (1/3) of the Gross Settlement Amount; and approving Class Counsel's out-of-pocket costs, which currently are ███;

5) Finally approving the Angeion Group, LLC as Settlement Administrator and the costs of settlement administration not to exceed ███;

6) Finding that the settlement was not covered by the Class Action Fairness Act;

7) Directing the settlement funds to be distributed in accordance with the terms of the Settlement Agreement; and

8) Dismissing this class and collective action with prejudice.

Defendant does not oppose this motion, and the Plaintiffs have submitted a proposed final

approval order for the Court's consideration.

## II.     PROCEDURAL HISTORY

Plaintiffs incorporate by reference the Procedural History and Terms of Settlement

Sections, as set forth in the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for

Preliminary Approval. (ECF No. 55 at 2-9.)

### A.     The Notice Provisions In The Settlement Agreement Have Been Satisfied

3

Since the Court granted preliminary approval of the Settlement Agreement on September 6, 2017, the Parties have fully complied with the Notice provisions detailed in the Settlement Agreement. Settlement Agreement ¶¶ 15(c)-15(i).

Pursuant to the terms of the Settlement Agreement, the Settlement Administrator obtained a mailing address, email address, and a telephone number for Class Members to submit Requests for Exclusion, undeliverable Class Notices, and to call with questions regarding the Settlement. Manigault Decl. ¶ 5. On or about September 25, 2017, the Settlement Administrator received from the Parties a mailing list (the "Class List") containing the Settlement Class Members' names, last known physical and email addresses, last known telephone number, for each Settlement Class Member for the Class Period. *Id* ¶ 6. The Class List contained data for 82 Settlement Class Members, including Plaintiffs. *Id*. A draft of the Class Notice was prepared by the Settlement Administrator and approved by the Parties. *Id.* ¶ 7.

The Settlement Administrator processed and updated the mailing addresses in the Class List by running the Class List through the U.S. Postal Service's National Change of Address database and also performed address searches using public and proprietary electronic resources which collect data from various sources such as utility records, property tax records, motor vehicle registration records (where allowed), and credit bureaus. *Id.* ¶ 8. On September 26, 2017, the Settlement Administrator mailed the Class Notice to 82 Settlement Class Members contained in the Class List via First Class mail. *Id.* ¶ 9.

The Class Notice advised Settlement Class Members that they would receive a payment unless they excluded themselves from the Settlement and that they had until November 10, 2017 to object to the settlement or submit a written request for exclusion. *Id.* ¶ 10. The Notices that were sent to Settlement Class Members contained the pre-tax minimum estimated award amounts they

4

were eligible to receive under the settlement. *Id.*

As of November 13, 2017, fifteen (15) Notices were returned by the post office. *Id.* ¶ 11. The Settlement Administrator re-mailed four (4) of the fifteen (15) Notices after receiving a forwarding address. *Id.* The Settlement Administrator performed address traces on the undeliverable Class Notice returned without a forwarding address. *Id.* The address trace (often called a "skip trace") utilized the Class Member's name, previous address and Social Security number for locating a current address. *Id.* Following these efforts, the undeliverable Notices were promptly re-mailed to six (6) Class Members via First Class mail at the updated addresses. *Id.*

### B.      Response From Class Members

The response to the Settlement from Class Members has been overwhelmingly positive. The Settlement Administrator was responsible for receiving requests for exclusion from the Settlement. *Id.* ¶ 12. Class Counsel – along with Defendant's Counsel – was responsible for receiving objections to the Settlement. Schalman-Bergen Decl. ¶ 16. **As of November 13, 2017, neither the Settlement Administrator nor Class Counsel had received any requests for exclusion from the Settlement**. *Id.*; Manigault Decl. ¶ 12.

Pursuant to the terms of the Settlement Agreement, Class Counsel shall provide Defendant's Counsel and the Angeion Group with a report of all Settlement Award Calculations without fourteen (14) days after the Final Approval of the Settlement. Settlement Agreement ¶ 26. Defendant's Counsel will review the Settlement Award Calculations for accuracy and report any errors within seven (7) days and resolve any calculation errors within an additional five (5) days if any such errors are identified. *Id.* ¶ 27. Payment of Settlement Awards will be made as soon as reasonably practicable after the payments made by Defendant into a Qualified Settlement Fund. Manigault Decl. ¶ 18; Settlement Agreement ¶ 28. Settlement checks will be valid and negotiable for a period of 180 days. Settlement Agreement ¶ 29. During the last 60 days of the 180 check-

5

cashing period, the Settlement Administrator may contact Settlement Class Members who have not yet cashed their checks to inform them of the 180 day deadline. *Id.* ¶ 29. Additionally, any remaining amounts after the 180-day period will be paid to the Scholarship Fund of the Pipeliners Club of Oklahoma City, the *cy pres* recipient designated in the Settlement Agreement. *Id.* ¶ 33. The Settlement Administrator will also distribute the Settlement Awards and coordinate tax administration. Schalman-Bergen Decl. ¶ 17; Settlement Agreement ¶ 24. The Settlement Administrator has agreed to perform administration duties for an amount not to exceed ▮▮▮▮▮▮▮▮. Schalman-Bergen Decl. ¶ 17; Manigault. Decl. ¶ 21; Settlement Agreement ¶ 21(c).

## III.    DISCUSSION

Plaintiffs respectfully request that the Court enter the accompanying proposed order finally approving the class and collective action settlement.

### A.    <u>Applicable Legal Standard</u>

#### 1.    **Legal Standard For Approval Of FLSA Settlements**

This case is also brought pursuant to Section 216(b) of the FLSA. The standard for approval of an action under the FLSA requires only a determination that the litigation involves a *bona fide dispute* and that the proposed settlement is fair and reasonable. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982); *Vassallo v. Goodman Networks, Inc.*, No. 4:15-cv-97-LG-CMC, 2016 WL 6037847, at *1 (E.D. Tex. Oct. 25, 2016). Because the Fifth Circuit has not definitively set out FLSA specific criteria to use when assessing the fairness and reasonableness of a proposed settlement agreement, district courts have looked to the same factors used in evaluating the fairness of a class action settlement under Fed. R. Civ. P. 23. *See Dyson v. Stuart Petroleum Testers, Inc.*, No. 1-15-cv-282-RP, 2016 WL 815355, at *2 (W.D. Tex. Feb. 29, 2016). To approve a FLSA settlement, the Court must determine whether: (1) the litigation involves a *bona fide* dispute; and (2) the proposed settlement fairly and reasonably resolves the dispute. *See*

*Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-cv-00603-RP, 2015 WL 12866212, at *2 (W.D. Tex. Dec. 23, 2015); *Jones v. JGC Dallas, LLC*, No. 3:11-cv-2743-O, 2014 WL 7332551, at *3 (N.D. Tex. Nov. 12, 2014) (citing *Sims v. Hous. Auth. City of El Paso*, No. EP:10-cv-109-PRM, 2012 WL 10862119, at *2-3 (W.D. Tex. Feb. 29, 2012)).

### 2.    Legal Standard For Final Approval Of Class Action Settlement Pursuant To FED. R. CIV. P. 23

To grant final approval, the Court must conclude that the proposed settlement is fair, reasonable, and adequate. *Slipchenko v. Brunel Energy*, No. H-11-1465 2015 WL 338358, at *7 (S.D. Tex. Jan. 23, 2015); Fed. R. Civ. P. 23(e). A settlement reached after arm's-length negotiations by experienced counsel generally gives rise to a presumption of fairness. *Aron v. Crestwood Midstream Partners LP*, No. 4:15-cv-1367, 2016 U.S. Dist. Lexis 152427, at *9 (S.D. Tex. Oct. 14, 2016). *See also Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) ("courts are to adhere to a strong presumption that an arms-length class action settlement is fair-- especially when doing so will result in significant economies of judicial resources--absent evidence weighing against approval.")

The Fifth Circuit has set forth six factors to be considered when determining the fairness of a proposed settlement:

> (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs' prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members ...

*All Plaintiffs v. All Defendants*, 645 F.3d 329, 334 (5th Cir. 2011); *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

### B.    The Terms Of The Proposed Settlement Are Fair And Reasonable Resolving A *Bona Fide* Dispute

Here, the proposed Settlement meets the standard for approval under the FLSA. To approve

the settlement agreement, the Court must find that "(1) the settlement involves the resolution of a *bona fide* dispute over an FLSA provision and (2) the settlement is fair and reasonable." *Cormier v. C & S Wireline Servs., L.L.C.*, No. 13–cv–01649–PAB–CBS, 2015 WL 12803706, at *1 (S.D. Tex. July 15, 2015) (quoting *Atlier v. Worley Catastrophe Response, LLC*, Nos. 11–241, 11–242, 2012 WL 161824, at *13 (E.D. La. Jan. 18, 2012)).

### 1.    A *Bona Fide* Dispute Existed Between The Parties

Courts look to "whether there exists a *bona fide* dispute" under the FLSA regarding the amount of hours worked or compensation due. *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005). In their respective Complaints, Plaintiffs alleged Defendant's compensation practices of paying its Inspectors a set day rate without taking into account the number of hours actually worked during a workweek or paying overtime compensation for all hours worked over forty in a workweek. Throughout litigation, Defendant denied Plaintiffs' allegations and asserted numerous defenses it believes would defeat Plaintiffs' claims in whole or in part. Thus, Defendant denies Plaintiffs' allegations in their respective complaints, and Plaintiffs disagree with Defendant's defenses.

Defendant is a corporation providing third-party inspection services to the oil and gas industry, with operations in the United States, including this judicial district. Defendant employs individuals who perform a variety of services for oil and gas companies in this judicial district and throughout the United States.

If Plaintiffs prevailed on liability, Defendant would be faced with the prospect of a substantial monetary verdict, as well as an obligation to pay legal fees and costs incurred by Plaintiffs to prosecute the case through trial and, possibly, appeals. Should Defendant have prevailed, then Plaintiffs and potential opt-in plaintiffs and class members would have obtained no recovery. The Parties acknowledge that their claims and defenses pose risks, which informed, in

part, their decision to resolve the bona fide disputes between them through mediation with an experienced wage and hour mediator, William H. Lemons, Esq.

During the course of their extensive settlement negotiations, the Parties exchanged data regarding all Settlement Class Members and performed and exchanged detailed damages calculations. In addition to disagreeing on whether additional overtime was owed under the FLSA, the Parties also disagreed regarding the appropriate formula for calculating damages in the event Plaintiffs prevailed on liability. Defendant also asserted that, even if Plaintiffs prevailed on liability, Plaintiffs would not be able to demonstrate that the violation was a "knowing violation," such that Plaintiffs would only be able to recover under a two-year FLSA statute of limitations. *See* 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988). Ultimately, the Settlement that the Parties reached reflects what Class Counsel believes to be a fair and reasonable settlement of disputed claims that takes into account the risks that Plaintiffs would face if the case proceeded in litigation.

Class Counsel has been litigating similar claims on behalf of oil and gas employees paid pursuant to a day rate method with no overtime compensation across the country for the past few years. As such, the Parties were able to narrow down the key issues early on to reach what they deem to be a fair and reasonable settlement.

### 2.      The Proposed Settlement Agreement Is Fair And Reasonable

Because the Fifth Circuit has not definitively set out FLSA specific criteria to use when assessing the fairness and reasonableness of a proposed settlement agreement, district courts have looked to the same factors used in evaluating the fairness of class action settlements under Fed. R. Civ. P. 23. *See Dyson v. Stuart Petroleum Testers, Inc.*, No. 1-15-cv-282-RP, 20016 WL 815355, at *2-3 (W.D. Tex. Feb. 29, 2016) (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)). These factors are: 1) whether the settlement was a product of fraud or collusion; 2) the

complexity, expense, and likely duration of the litigation; 3) the stage of the proceedings and the amount of discovery completed; 4) the factual and legal obstacles to prevailing on the merits; 5) the possible range of recovery and the certainty of damages; and 6) the respective opinions of the participants, including class counsel, class representative, and the absent class members. *Id.*

The Gross Settlement Amount provides Class Members with the recovery of all claims for damages, including unpaid overtime hours worked, and it was carefully negotiated based on factual discovery, a substantial investigation by Class Counsel, and the review and analysis of documents produced by Defendant in preparation for mediation. The Gross Settlement Amount is based on an analysis of workweeks that the Settlement Class Members worked for Defendant during the relevant time period, as determined by Defendant's personnel and payroll records. If the settlement is approved, all Eligible Class Members will receive a Settlement Award from the Net Settlement Amount, and Eligible Class Members will release claims against Defendant. The average Settlement Award is estimated to be ███████, which represents substantial compensation to Eligible Class Members for their claims. At the conclusion of the 180-day check void period, the Settlement Administrator shall send a check for the total amount of any uncashed Settlement Awards to Plaintiffs' counsel, payable to the scholarship fund of the Pipeliners Club of Oklahoma City, the Parties' agreed upon *cy pres* recipient. Schalman-Bergen Decl. ¶ 18.

### 3.     The Allocation Formula Is Fair And Reasonable

The proposed allocation formula is fair and reasonable and should be approved. *See In re Dell*, No. A–06–CA–726–SS, 2010 WL 2371834, at *10 (W.D. Tex. June 11, 2010) ("The allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel.") (quoting *In re Am. Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 429–30 (S.D.N.Y. 2001) (citations omitted)); *see also Chaverria v. New York Airport Serv., LLC*, 875 F. Supp. 2d. 164 (E.D.N.Y. 2012) ("As a general rule, the adequacy of an

allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.") (citations omitted). Under the proposed allocation formula, Eligible Class Members who are Opt-In Plaintiffs shall receive settlement shares ███████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████ ("FLSA Settlement Shares"). Eligible Class Members who are State Settlement Class Members shall receive settlement shares ████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ ("State Law Settlement Shares").

"A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *Slipchenko*, 2015 WL 338358, at *12 (quoting *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *23 (N.D. Tex. Nov. 8, 2005)). This formula is similar to those found to be fair and reasonable in similar cases, and warrants approval. *See, e.g., Fenley v. Applied Consultants, Inc.*, No. 2:15-CV-00259-MRH (W.D. Pa. June 17, 2016) (Dkt. No. 65) (approving a day rate overtime settlement with an allocation formula based on workweeks).

When, in comparison to the proposed Settlement, proceeding with litigation would require a substantial amount of time to yield a benefit to the Settlement Class Members, it is an indication that the proposed settlement is fair, reasonable, and adequate. *See Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 130-131 (D. Colo. 2016) ("[G]iven the inherent risks associated with further litigation, the Class Members may recover less should the case proceed through trial. Thus, the proposed settlement at this stage far outweighs any potential benefits, if any at all, of further litigation.") In the instant case, the complexity and expense of proceeding with litigation is clearly

outweighed by the efficiency and financial relief presented by the Settlement Agreement.

Plaintiffs believe that the Settlement is an excellent result for the members of the Settlement Class. The Settlement was the result of contested litigation, factual discovery, and arm's-length negotiations. Schalman-Bergen Decl. ¶¶ 7-10. The proposed Settlement was only reached after the Parties exchanged substantial informal discovery and conducted a full-day, in-person mediation session in Oklahoma City, Oklahoma, preceded by extensive arm's-length negotiations between counsel for the Parties. *Id.* ¶¶ 6-7. As described above, Class Counsel extensively investigated the applicable law, the relevant facts discovered in this action, and the potential defenses thereto. The settlement amount is based on an intensive review of the facts and law. *Id.* ¶ 10.

Given the substantial monetary settlement that was negotiated, continuing the litigation of this case and exposing the case to the aforementioned risks is not warranted. In summary, the proposed Settlement Agreement is the product of careful factual and legal research and arm's-length negotiations between the Parties, which strongly supports final approval of this Settlement.

### 4.    The Settlement Class Members' Response Supports The Settlement

Finally, the Settlement Class Members' collective response to the Settlement overwhelmingly supports final approval. With the deadline for making objections and opting out of the Settlement passed for all, it is highly significant that there have been ***zero objections and zero requests for exclusion*** to the proposed Settlement. *See* Schalman-Bergen Decl. ¶ 16; Manigault Decl. ¶ 12. This overwhelmingly positive response from the Settlement Class demonstrates the fairness and adequacy of the Settlement's terms. Nothing in the response of Class Members warrants denial of the final approval of the settlement. Given the Court's preliminary approval and the complete absence of any objections by Class Members, final approval of the settlement is warranted. *See In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, MDL No. 2328, 2016

WL 235781, at *5 (E.D. La. Jan. 20, 2016) (holding that no objections supports final approval of settlement); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1068 (S.D. Tex. 2012) ("Receipt of few or no objections can be viewed as indicative of the adequacy of the settlement") (omitting internal quotations and citations).

C.        **The Proposed Settlement Furthers The Purpose Of The FLSA**

Finally, the Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. Indeed, the Settlement furthers the purposes of the FLSA by providing Eligible Class Members with substantial recovery for their unpaid overtime that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...."). Because the settlement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as reasonable.

D.        **The Settlement Satisfies The Relevant Criterion For Rule 23 Approval**

1.        **The Opinion Of Experienced Counsel Supports Approval Of The Settlement, Which Resulted From Arm's-Length Negotiations By Informed And Experienced Counsel**

The first and sixth factors strongly favor approval of the Settlement. The Settlement was the result of an intense, in-person mediation session between the parties with the assistance of skilled mediator, William H. Lemons, Esquire, in Oklahoma City, Oklahoma, on February 1, 2017 and several months of subsequent arm's-length negotiations with Mr. Lemons' assistance. Schalman-Bergen Decl. ¶ 7. The participation by such neutral facilitator and the adversarial nature

of those negotiations illustrate that this case was resolved and settled only after sufficient arm's-length bargaining. Counsel for both sides are highly experienced in wage and hour class action litigation. The Declaration of Class Counsel filed in support of this Motion describes Class Counsel's experience in this area. These experienced wage and hour attorneys believe that this case is appropriate for settlement and that the ██████████████████ will provide significant relief to Plaintiffs and Settlement Class Members. *See Slipchenko*, 2015 WL 338358, at *12 ("the endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims"). This factor supports final approval of the Settlement.

### 2. The Complexity, Expense, And Likely Duration Of The Litigation, As Well As The Stage Of The Proceedings And The Amount Of Discovery, Favor Approval Of The Settlement

The second and third factors weigh in favor of approval of the Settlement. In most situations, unless the Settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results. *See Klein*, 705 F. Supp. 2d at 651 ("When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened.") Without a settlement, the Defendant would have likely filed motions to decertify and, even if those motions failed, any trial in the case would likely last multiple days.

The goal of the third factor – the stage of the proceedings and the amount of discovery – is an "evaluation [of] whether the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Id*. at 653 (omitting internal quotations and citations). In this case, the settlement was reached after (1) substantial informal discovery, which included exchanging documents and a factual and legal investigation by Class Counsel, and (2) a full-day, in-person mediation session, which included follow up arm's-length negotiations

14

between counsel for the Parties. Schalman-Bergen Decl. ¶¶ 6-7. There was sufficient investigation and discovery conducted in this matter to allow counsel and the Court to act intelligently concerning the settlement of the claims. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998) (finding class counsel's "vigorous litigation," pursuit of discovery, and use of informal discovery supported settlement).

Notably, the parties exchanged documentation, records, and information that allowed them to determine the alleged losses that the Class Members suffered as a result of the alleged improprieties at issue in this case. Schalman-Bergen Decl. ¶¶ 6-7; 13. Defendant produced critical payroll records that helped to inform the Parties' decision to settle. Once these documents were analyzed by the Parties, along with the other discovery provided and multiple extensive interviews undertaken, additional discovery would not likely have changed the outcome of the Settlement. *Id.* ¶ 13. The state of the proceedings and amount of discovery supports final approval of the Settlement.

### 3. The Likelihood Of Success On The Merits And The Range Of Possible Recovery Favor Approval Of The Settlement

In evaluating the likelihood of success, the Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *In re Heartland*, 851 F. Supp. 2d at 1065. However, "the court, must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trail." *See Vassallo,* 2016 WL 6037847, at *7 (internal quotations omitted).

The Settlement is within the range of possible approval. As discussed *supra*, the Parties reached the Settlement only after engaging in extensive arm's-length discussions. The settlement of ██████ for all 82 Settlement Class Members will result in an estimated average per person recovery of ██████. Every Class Member who participates in this Settlement will receive a

minimum payment of ▮. Settlement Agreement ¶ 23(a). Specifically, the Gross Settlement Amount is based on an analysis of workweeks that the Settlement Class Members worked for Defendant during the relevant time period, as determined by Defendant's personnel and payroll records. Schalman-Bergen Decl. ¶ 14; Settlement Agreement ¶ 23(a)-(f). The Gross Settlement Amount is a negotiated amount that falls between Defendant's calculated potential exposure and Plaintiffs' calculated potential damages. Schalman-Bergen Decl. ¶ 14.

### E. The Court Should Finally Certify the State Settlement Classes Under Fed. R. Civ. P. 23

In addition, the State Settlement Classes should be finally certified. A case may be certified as a class action under Fed. R. Civ. P. 23 only when:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Weiss v. York Hosp.*, 745 F.2d 786, 807 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (1985); *In re Heartland*, 851 F. Supp. 2d at 1052. These four threshold requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively. *See, e.g., In re Enron Sec. & ERISA Litig.*, No. H-01-3624, 2003 WL 22494413, at *2 (S.D. Tex. July 24, 2003).

Federal Rule of Civil Procedure 23(b)(3) permits the court to certify a class in cases where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These dual requirements are commonly referred to as "predominance" and "superiority," respectively. *See, e.g.*, *In re Constar Int'l, Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009).

16

On September 6, 2017, the Court preliminarily certified the Classes under Rule 23(b)(3) for settlement purposes (ECF No. 58), and Plaintiffs now move for final certification of the Classes under Rule 23(b)(3). Pursuant to the terms of the Settlement Agreement, Defendant has stipulated that, for settlement purposes only, the requisites for establishing class certification pursuant to Fed. R. Civ. P. 23 with respect to the Class Members have been and are met. Settlement Agreement ¶¶ 11.

### 1.    The Settlement Classes Are Sufficiently Numerous

To meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1), "the class size only need be large enough that it makes joinder impracticable." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). The State Settlement Classes here meets the numerosity requirement because 27 Washington State Settlement Class Members and 24 Pennsylvania Settlement Class Members have been identified through Defendant's payroll records. Each of the State Settlement Classes' Members will receive a settlement award. Schalman-Bergen Decl. ¶ 18; Settlement Agreement ¶ 13.

### 2.    The State Settlement Classes Seek Resolution Of Common Questions

The commonality requirement of Fed. R. Civ. P. 23(a)(2) is satisfied where there are questions of law or fact common to the class *See In re Firstplus Fin. Grp., Inc. Sec. Litig.*, No. 3:98-CV-2551-M, 2002 WL 31415951, at *6 (N.D. Tex. Oct. 23, 2002). Here, Plaintiffs and the Classes Members' claims arise from Defendant's common pay policies. The alleged common issues include, for example: (1) whether the Classes Members were entitled to overtime compensation for their hours worked; (2) whether the Classes Members were similarly denied compensation for all hours worked; and (3) whether Defendant's policy of failing to pay any overtime compensation to the Classes Members violated state wage and hour laws and common law. These sample common questions of law and fact, which Plaintiffs contend apply uniformly

to all members of the proposed Classes, are sufficient to satisfy the commonality requirement.

### 3.    The Claims Of The Named Plaintiffs Are Typical Of The Class

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied for purposes of approving the settlement because Plaintiffs' claims are reasonably coextensive with those of absent class members and because the claims arise from a single course of conduct by Defendant and a single set of legal theories. *In re Heartland*, 851 F. Supp. 2d at 1055. Plaintiffs' claims for unpaid overtime compensation during weeks when they worked as Class Members are typical of the claims of the Classes.

### 4.    Class Counsel and Plaintiffs Meet The Adequacy Requirements of the Classes

To meet the adequacy requirement of Fed. R. Civ. P. 23(a)(4), a named Plaintiff must show "the class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members" and that there is no conflict between the individuals' claims and those asserted on behalf of the class. *In re Heartland*, 851 F. Supp. 2d at 1055.

The adequacy of representation requirement is met here because the Plaintiffs have the same interests as the Classes Members. There is no conflict between the Plaintiffs and the Classes in this case, and Plaintiffs' claims are in line with the claims of the Classes. The Plaintiffs have aggressively and competently asserted the interests of the Classes, and Plaintiffs' counsel is skilled and experienced in wage and hour class action litigation, as set forth in the declarations of Class Counsel submitted with this Motion.

### 5.    The Classes Satisfy The Predominance And Superiority Requirements Of Fed. R. Civ. P. 23(b)(3)

Under Fed. R. Civ. P. 23(b)(3), class certification is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods

for the fair and efficient adjudication of the controversy."

For the reasons discussed above, the Classes satisfy the predominance requirement. Moreover, allowing the Class Members the opportunity to participate in a class settlement that yields an immediate and substantial benefit is highly superior to having a multiplicity of individual and duplicative proceedings in this Court. It is also superior to the alternative of leaving these important labor rights unaddressed due to the difficulty of finding legal representation and filing claims on an individual basis.

Accordingly, Plaintiffs respectfully request that the Court finally certify the Classes for settlement purposes only.

### F.   The Notice Provisions Were Followed And Provided Adequate Notice To The Classes That Satisfies Due Process

The U.S. Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Maher v. Zapata Corp.*, 714 F.2d 436, 451 (5th Cir. 1983) (notices should be approved when they "fairly apprise[] the prospective members of the class of the terms of the settlement and the options that are open to them," and provide them with "sufficient information for them to make a 'rational decision whether they should intervene in the settlement approval procedure.'") (internal citation omitted); *In re Heartland*, 851 F. Supp. 2d at 1061-62 (approving notice that "provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement"); *Scott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 342 (S.D. Tex. 2011) (same); *Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014) (approving "Settlement Notice and Option Form proposed by the Parties" as "fully and accurately inform[ing] the FLSA

Collective Class Members of all material elements of the Litigation and the Agreement").

The proposed Notice and manner of distribution negotiated and agreed upon by the Parties was "the best notice practicable," as required under Fed. R. Civ. P. 23(c)(2)(B). Here, the form and manner of the Settlement Notice was previously approved by the Court in its preliminary approval of the Settlement. The Notice provisions of the Settlement Agreement were all followed by the Settlement Administrator. *See generally* Manigault Decl. Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. CONTE & NEWBERG at §§ 8.21 and 8.39; MANUAL FOR COMPLEX LITIG. at § 21.311 and 21.312.

### G. The Additional Service Awards To Named Plaintiffs Are Justified And Should Be Approved

Pursuant to the Settlement Agreement, Defendant has agreed to pay Plaintiffs Oates, Stapleman, and Webb service awards in the amount of ▓▓▓▓ each for their efforts in bringing and prosecuting this matter and, in addition, for their broader release against Defendant. Subject to Court approval, this amount will be paid to Plaintiffs in addition to their recovery of unpaid overtime for the time when they worked for Defendant.

"Federal courts consistently approve incentive awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they shoulder during litigation." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 339–40 (W.D. Tex. 2007) (quoting *Camp v. Progressive Corp.*, No. Civ. A. 01–2680, Civ. A. 03–2507, 2004 WL 2149079, at *8 (E.D. La. Sept. 23, 2004) (internal quotation omitted); *see also Atlier*, 2012 WL 161824 at *15; *Carrabba v. Randalls Food Mkts., Inc.*, 191 F. Supp. 2d 815, 835 (N.D. Tex. 2002) (recognizing practice of compensating named representatives in class action suits). Service awards "are not uncommon in class action litigation and particularly where ... a common fund has been created for the benefit of

the entire class." *Atlier*, 2012 WL 161824 at *15 (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273,

333 n. 65 (3d Cir. 2011). It is particularly appropriate to compensate named representative

plaintiffs with service awards where they have actively assisted plaintiffs' counsel in their

prosecution of the litigation for the benefit of a class. "District Courts in the Fifth Circuit routinely

award $5,000-$10,000 per named plaintiff." *Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-

CA-00912-FB, 2016 WL 4419472, at *16 (W.D. Tex. May 24, 2016) (citing *DeHoyos*, 240 F.R.D.

at 340 (citing cases)).

　　　　Here, the proposed additional payments are justified by the benefits that Plaintiffs have

brought to the Class Members. Plaintiffs took significant risks in coming forward to represent the

interests of their fellow employees, including risking their reputations in the community and in

their field of employment, in order to participate in this case on behalf of the Class Members.

Schalman-Bergen Decl. ¶ 20. Plaintiffs worked with Class Counsel, providing background

information about their employment, about Defendant's policies and practices, and about the

allegations in this lawsuit. *Id.*; *see Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y.

2005) (noting that service awards are especially appropriate in employment litigation where "the

plaintiffs is often a former or current employee of the defendant, and thus, by lending his name to

the litigation, he has for the benefit of the class as a whole, undertaken the risk of adverse actions

by the employer or co-workers."); *see also Sand v. Greenberg*, No. 08-cv-7840, 2011 WL

7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable

and finding that plaintiffs "took risks by putting their names on this lawsuit," including the risk of

"blacklisting and other more subtle forms of retaliation"); *Craig v. Rite Aid Corp.*, No. 4:08-cv-

2317, 2013 WL 84928, at *13 (M.D. Pa. Jan. 7, 2013), *appeal dismissed* (3d Cir. Feb. 20, 2013)

("[N]amed plaintiffs in FLSA or state wage and hour claims are often retaliated against in the

21

industry as a result of their obvious participation in such litigation."). Plaintiffs Oates, Stapleman, and Webb are also providing a broader release of claims to Defendant. Schalman-Bergen Decl. ¶ 21.

The additional service award payments requested in this case are in line with those approved in collective and class actions in the Fifth Circuit. *See, e.g.*, *Duncan*, 2016 WL 4419472 at *16 (approving $10,000 incentive award to plaintiff); *Camp*, 2004 WL 2149079 at *7 (awarding up to $10,000 to each named plaintiffs as compensation for total payment of $102,000); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F.Supp.2d 942, 973 (E.D. Tex. 2000) ("approving incentive awards of $25,000 to each of two named plaintiffs"); *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 504 (N.D. Miss. 1996) (approving $10,000 incentive award to each named plaintiff).[2]

For these reasons, the service award payments of ███ each to Plaintiffs Oates, Stapleman, and Webb should be approved as fair and reasonable.

---

[2] Similar or larger service awards for wage and hour collective and class actions in other district courts have been approved. *See Fenley v. Applied Consultants, Inc.*, No. 2:15-CV-00259-MRH (W.D. Pa. June 17, 2016) (Dkt. No. 65) ($10,000 service award to named plaintiff); *Niver v. Specialty Oilfield Services,* No. 2:14-cv-01599-JFC (W.D. Pa. Oct. 7, 2016) (Dkt. No. 89) (granting $10,000 service award to one named plaintiffs and $5,000 to the other two named plaintiffs); *Ciamillo v. Baker Hughes*, No. 3:14-cv-00081-RRB (D. Alaska June 9, 2015) (Dkt. No. 71) (approving $10,000 service award to each named plaintiff); *Elliot v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316 at *11 (C.D. Cal. June 12, 2014) ($10,000 service award to named plaintiff); *Raniere v. Citigroup, Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (granting service awards of $20,000, $15,000 and $7,500 to named plaintiffs); *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1010 (D. Colo. 2014) (approving service award of $15,000 to the named plaintiff); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11–cv–00738–RNC, 2014 WL 3778211, at *4 (D. Conn. July 31, 2014) ($10,000 service award to named plaintiff); *Creed v. Benco Dental Supply Co.*, No. 3:12-CV-01571, 2013 WL 5276109, at *7 (M.D. Pa. Sept. 17, 2013) (approving service award of $15,000 to named plaintiffs as he "took [ ] risks for what would only be at most a couple thousand dollar recovery if he were to be treated the same as all the unnamed class members."); *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *16 (W.D. Okla. Oct. 27, 2008) (approving service award of $15,000 to the named plaintiff).

**H.**     **The Request For Attorneys' Fees And Costs Should Be Finally Approved**

**1.**     **The Fee Shifting Provisions Of The FLSA And Pennsylvania And Washington Wage Laws Provide For The Award Of Attorneys' Fees**

A plaintiff in an FLSA case may recover his/her attorneys' fees and expenses under the statute's fee-shifting provision. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or Plaintiff, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Steele v. Leasing Enter., Ltd.*, 826 F.3d 237, 249 (5th Cir. 2016) (award of attorney's fees under Section 216(b) of the FLSA is mandatory); *Riddle v. Tex-Fin., Inc.*, No. H-08-3121, 2011 WL 1103033, at *5 (S.D. Tex. Mar. 22, 2011); *King v. Allegiance Mgmt., LLC*, No. A–09–CA–317 LY, 2010 WL 3703066, at *2 (W.D. Tex. Sept. 15, 2010) (same).

Pennsylvania and Washington wage and hour laws similarly provide for attorneys' fees paid by the employer in recovery by the employee. *See* 43 P.S. § 333.113 ("worker may recover in a civil action the full amount of such minimum wage less any amount actually paid to the worker by the employer, together with costs and such reasonable attorney's fees as may be allowed by the court…"); 43 P.S. § 260.9a(f) ("The court in any action brought under this section shall, in addition to any judgment awarded to the plaintiff or Plaintiff, allow costs for reasonable attorneys' fees of any nature to be paid by the defendant."); RCW 49.48.030 ("In any action in which any person is successful in recovering judgment for wages or salary owed to him or her, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer: Provided, however, That this section shall not apply if the amount of recovery is less than or equal to the amount admitted by the employer to be owing for said wages or salary.")

Under Fifth Circuit law, a Court may evaluate the award of attorneys' fees through two established methods: (1) the lodestar approach; and (2) the percentage of the recovery approach.

*Union Asset Mgmt. Holding A.G. v. Dell, Inc*., 669 F.3d 632, 642 (5th Cir. 2012); *In re Heartland*, 851 F. Supp. 2d at 1071; *In re Dell*, 2010 WL 2371834, at \*12 (citing *In re OCA, Inc. Secs. & Deriv. Litig.*, No. 05-2165, 2009 WL 512081 at \*17 (E.D. La. 2009)).  While the Fifth Circuit has not expressly adopted the percentage method over the lodestar method for common fund lawsuits, it has "recognized that the percentage method is the preferred method of many courts. *Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, No. 3:09-CV-0298-N, 2016 WL 8201334, at \*2 (N.D. Tex. Aug. 30, 2016) (*citing Union Assset Mgmt.*, 669 F.3d at 643; Schwartz, 2005 WL 3148350, at \*25); *see also In re Actos (Pioglitazone) Prods. Liab. Litig.*, No. MDL No. 6:11-md-2299, 2017 WL 3033134, at \*26 (W.D. La. July 17, 2017) ("Virtually all of the recent common fund fee awards by district courts in the Fifth Circuit — whether MDL or class action — have used the percentage method, with an overlay analysis of reasonableness, using the *Johnson* factors.").

The percentage method is more appropriate and superior to the lodestar method because the lodestar method incentivizes attorneys to run up the billable hours and deters early settlement of disputes, as it is calculated on the number of hours worked on the case. *Stanford Int'l Bank*, 2016 WL 8201334, at \*2. "The percentage method is appropriately reviewed under the framework set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) to determine whether the fee is reasonable." *Dyson*, 2016 WL 815355 at \*4 (citing *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 860 (E.D. La. 2007).

Under the common fund doctrine, "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Parties to a class [or collective] action may negotiate not only the settlement of the action itself, but also payment of attorneys' fees. *See Evans v. Jeff D*., 475 U.S. 717, 734-35, 738 n. 30 (1986). A negotiated fee is

24

preferred because it prevents attorneys' fees from becoming "a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."). Courts therefore have "a responsibility to encourage agreement" on fees where possible. *Blum v. Stenson*, 465 U.S. 886, 902 n.19 (1984). Here, as part of the negotiations that led to the Settlement, Defendant agreed not to object to an award of one-third of the Gross Settlement Amount for attorneys' fees and costs.

In analyzing a request for attorneys' fees and costs, Courts review the following factors: (1) time and labor required; (2) novelty and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Dyson*, 2016 WL 815355 at *5.

These factors support approval of the requested fee and are discussed below.

## 2. Time And Labor Required

The Fifth Circuit is the only circuit that has yet to explicitly adopt the percentage method in common fund cases. *In re Dell*, 2010 WL 2371834, at *12 (*citing Klein*, 705 F. Supp. 2d at 674; Manual for Complex Litigation (Fourth) § 14.121 (2010)). The Fifth Circuit does recognize that trial courts have the discretion to award fees based solely on a percentage of the fund approach and are not required to conduct a lodestar analysis in common fund class actions. *See In re Dell*, 2010 WL 2371834, at *12; *Union Asset Mgmt.*, 669 F.3d at 644. Nonetheless, prosecuting this matter to a successful settlement for the benefit of the Settlement Class Members required Berger & Montague, P.C. to expend a significant amount of time by attorneys, including substantial legal

and factual research, an in-person mediation, and numerous subsequent settlement negotiations. The time and labor expended support the requested fee.

### 3. Novelty And Difficulty Of Question Presented By The Case, As Well As The Skill Required To Perform The Legal Service Properly

Certifying any class to afford nationwide relief is a significant undertaking in terms of sophistication and risk. In this case, Plaintiffs and Defendant agree that there are numerous disputed issues of fact and law, including, specifically, whether Plaintiff and the Settlement Class Members were entitled to overtime compensation. Defendant would contest the number of overtime hours worked. Defendant asserted that attaining and maintaining class certification would be difficult. Because Defendant had potentially strong legal and factual defenses to Plaintiffs' claims, even if Plaintiffs were able to obtain maintain FLSA certification and succeed on certifying Rule 23 classes in the action, an outcome of zero recovery for the Plaintiffs and for the Opt-In Plaintiffs and Class Members remained possible. Class Counsel accepted these risks, diligently prosecuted the case, and negotiated a meaningful and substantial recovery. Accordingly, this factor also supports Class Counsel's fee request.

The wage and hour issues in this litigation are governed both by the highly technical federal FLSA law and regulations and the similarly technical state statutes. Class Counsel focus their practices in this highly technical area and have litigated numerous cases under these wage and hour laws on both an individual and class/collective action basis. See generally Schalman-Bergen Decl. ¶¶ 2-4, Ex. A, B&M Bio. Class Counsel thus had the requisite skill to perform the legal services required in this complex litigation.

### 4. Customary Fee

The Fifth Circuit has noted that fee awards generally range from 20% to 50% in cases taken on a contingent fee basis and/or with a common fund. *See Vela v. City of Houston*, 276 F.3d 659,

681 (5th Cir. 2001); s*ee also Bryant v. United Furniture Indust., Inc.*, No. 1:13CV246–SA–DAS, 2017 WL 639320, at *4 (N.D. Miss. Feb. 16, 2017) ("awards commonly fall between a lower end of 20% and an upper end of 50%"); *Cimarron Pipeline Const., Inc. v. Nat'l Council on Comp. Ins.*, Nos. CIV 89–822–T, CIV 89–1186–T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249–50 (S.D. Ohio 1991) ("The percentages awarded in common fund cases typically range from 20 to 50 percent of the common fund created.")

Courts have approved a fee of 40% of the settlement fund in an oil and gas FLSA wage and hour case. *See Bryant*, 2017 WL 639320, at *4 (approving 40% attorneys' fee award from a common fund settlement). Fees within this range are "presumptively reasonable." *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 WL 1268824, *4 (D. Colo. Mar. 9, 2000).

Here, Class Counsel seeks one-third (1/3) of the Gross Settlement Amount as fees. As described above, this is well within the percentage range approved in similar cases, and is in fact lower than many fee awards in this District. *See, e.g.*, *Whittington v. Taco Bell of Am., Inc.*, No. 10–cv–01884–KMT–MEH, 2013 WL 6022972, *6 (D. Colo. Nov. 13, 2013) ("Together the fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award."); *Cimarron Pipeline*, 1993 WL 355466, *2 (finding that "attorneys' fees of 1/3 of the common fund created by the efforts of counsel for the Class are in line with comparable other cases); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. CIV. 6:12-1609, 2015 WL 965696, at *4 (W.D. La. Mar. 3, 2015) ("It is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third.") Thus, the customary fee factor supports the requested fee award.

### 5.      Whether The Fee Is Fixed Or Contingent

Class Counsel agreed to represent the Named Plaintiffs on a contingency fee basis. *See* Schalman-Bergen Decl. ¶ 22. Courts have recognized the importance of such arrangements, noting that many workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990). Thus, "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case." *In re Abrams*, 605 F.3d 238, 245-46 (4th Cir. 2010). "Access to the courts would be difficult to achieve without compensating attorneys for that risk." *Id.*

In this case, Class Counsel would not have recovered any of their fees and out-of-pocket costs had they not obtained a settlement or prevailed at trial. Schalman-Bergen Decl. ¶ 22. This factor thus weighs in favor of the requested fees because Class Counsel assumed significant risk of nonpayment when they agreed to represent Named Plaintiff on a contingency fee basis. *See DeHoyos*, 240 F.R.D. at 330 *(quoting In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at \*6 (E.D. La. May 18, 1994) ("Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable."). By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them. The risks Class Counsel undertook were real, and the resources that Class Counsel dedicated to this action meant that such resources were not available to other cases. Class Counsel's contingency risk, together with the excellent result that has been achieved on behalf of the Class Members, support the requested fees and costs.

### 6.      Any Time Limitations Imposed By The Client Or Circumstances

The FLSA provides a maximum three-year statute of limitations on claims. *See* 29 U.S.C.

§ 255(a). Unlike a Rule 23 class action, the statute of limitations for the FLSA claims of potential

opt-in plaintiffs is not tolled by the filing of Plaintiff's complaint, but rather by the opt-in plaintiff

filing his/her written consent with the court. *See Stransky v. HealthONE of Denver, Inc.*, 868 F.

Supp. 2d 1178, 1181-82 (D. Colo. 2012). In this case, Class Counsel filed Plaintiff Oates'

Complaint on June 15, 2015, Plaintiff Stapleman's Complaint on January 27, 2016, and Plaintiff

Webb's Complaint on April 15, 2016, thereby ceasing the running of Plaintiffs' own statute of

limitations, but not of the potential opt-in plaintiffs.

The Parties stipulated to conditional certification rather than moving and briefing

conditional certification. *See Oates v. Quality Integrated Servs., Inc.*, No. 4:15-cv-01727, Dkt. No.

20 (S.D. Tex.); *Stapleman v. Quality Integrated Servs., Inc.* No. 2:16-cv-0024-SMJ, Dkt. No. 29

(E.D. Wash.); *Webb v. Quality Integrity Services, Inc.*, No. 2:16-cv-00457, Dkt. No. 20 (W.D.

Pa.). This allowed the Parties fully engage in good faith in early mediation and reach this

settlement.

### 7.      Amount Involved And Results Obtained

Here, the Gross Settlement Amount represents a significant recovery on behalf the

Settlement Class Members in light of some risks. For instance, Defendant was prepared to argue

that the work that the Class Members performed was exempt from the overtime requirements of

the FLSA. Among other things, Defendant also disputed the average number of hours worked by

Class Members.

Furthermore, the Gross Settlement Amount is a negotiated amount that falls between

Defendant's calculated potential exposure and Plaintiff's calculated potential damages. Schalman-

Bergen Decl. ¶¶ 14.  As determined by Defendant's personnel and payroll records, the Gross

Settlement Amount is based on an examination of each Class Member's workweeks when s/he worked for Defendant during the relevant time period. *Id*. Each eligible settlement Class Member will receive a settlement award. *Id.* ¶ 18. In sum, the Gross Settlement Amount represents an excellent result given the circumstances of the case and, thus, the "amount involved and results obtained" factor supports the proposed fee award.

### 8.     Experience, Reputation, And Ability Of The Attorneys

As is described in detail in Class Counsel's declaration, Class Counsel focus their practices on and have extensive experience in representing workers in wage and hour litigation nationwide, including class and collective action cases. *See* Schalman-Bergen Decl. ¶¶ 2-4. Counsel have shown their ability by achieving the excellent result obtained for the Class Members in this case. The experience, reputation, and ability of Class Counsel, therefore, support the requested fee award.

### 9.     The Undesirability Of The Case

Class Counsel undertook significant risk in agreeing to represent Named Plaintiffs. The risk assumed by Class Counsel is similar to that recognized by district courts in the Fifth Circuit. *See Garza v. Sporting Goods Properties, Inc.*, No. CIV. A. SA-93-CA-108, 1996 WL 56247, at *33 (W.D. Tex. Feb. 6, 1996) ("Factors [ ] such as the financial burden on counsel and the demands of handling a class action of the size and complexity as set forth, may cause a case to be considered 'undesirable.'") (internal citations omitted).

Large scale wage and hour cases are complicated and time-consuming matters. Any attorney undertaking these types of cases must be prepared to make tremendous investments of time, energy, and financial resources in order to appropriately pursue them, as evidenced in this case. In preparing for mediation, Class Counsel reviewed Defendant's payroll and personnel documents and, based on the data provided, generated a damages analysis consisting of various

30

models representing different assumptions. Schalman-Bergen Decl. ¶ 7. More generally, Class Counsel possesses particularized skill, experience, and ability to litigate these types of claims. *Id.* ¶¶ 3-4.

> ### 10.     Nature And Length Of The Professional Relationship With The Client

Firms representing employees in wage and hour matters are different than defense firms, which have a steady book of corporate clientele. Typically, defense firms' clients require continuous legal services from their counsel. Comparatively, it is unlikely that many Class Members will be seeking additional representation from Class Counsel after the conclusion of a lawsuit. The wage claims asserted in this case do not lend themselves to continuous, long-term attorney-client relationships. This factor thus weighs in favor of the requested fee award.

> ### 11.     Awards In Similar Cases

Finally, the requested fee award aligns with awards made in similar actions. The Fifth Circuit has noted that fee awards generally range from 35% to 40% are common in cases taken on a contingent fee basis. *See Vela*, 276 F.3d at 681. Here, Class Counsel's request for one-third of the Gross Settlement Fund is consistent with the norms of wage and hour class and collective litigation in this Circuit and across the country. Courts around the country have "routinely awarded one-third or more of the settlement fund as attorneys' fees in wage and hour cases." *See Henry v. Little Mint, Inc.*, No. 12-cv-3966, 2014 WL 2199427, *15 (S.D.N.Y. May 23, 2014) (noting that request for fees was "in line with decisions from across the country that have awarded one-third or more in wage-and-hour settlements" and citing cases). Class Counsel's request for one-third of the Gross Settlement Fund falls well within the range of reasonable allocations in the context of awards granted in wage and hour cases. *See, e.g.*, *Bryant*, 2017 WL 639320 at *4 (granting attorneys' fees award of 40% of the common fund); *Dudymott*, No. 7:15-cv-882-RAJ (same); *Fenley v. Applied Consultants, Inc.*, No. 2:15-cv-00259 (W.D. Pa. June 16, 2016) (Dkt. No. 65)

(approving fee award in 1/3 of the claimed portion of the Gross Settlement Fund); *Black v. Wise Intervention Servs.*, Inc., No. 2:15-cv-00453-MPK (W.D. Pa. Mar. 16, 2016) (Dkt. No. 46) (approving fee award of 33.33% of the total settlement amount to class counsel in wage and hour settlement); *Shaw v. Interthinx, Inc.*, No. 13–cv–01229–REB–NYW, 2015 WL 1867861, at *8 (D. Colo. Apr. 22, 2015) (same); *Whittington*, 2013 WL 6022972 at *6 (approving a request for fees and costs in an FLSA class action settlement where combined the fees and costs amounted to approximately 39% of the settlement fund).

Accordingly, the fees approved in similar cases further support the requested fee here.

## I.      **Class Counsel's Costs Should Be Approved**

In addition to being entitled to reasonable attorneys' fees, the FLSA provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b). Similarly, the common fund doctrine provides for "reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 210 F.R.D. 508, 535 (E.D. Mich. 2003). *See also Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (finding expenses such as "(1) travel and lodging, (2) local meetings and transportation, (3) depositions, (4) photocopies, (5) messengers and express service, (6) telephone and fax, (7) Lexis/Westlaw legal research, (8) filing, court and witness fees, (9) overtime and temp work, (10) postage, (11) the cost of hiring a mediator, and (12) NJ Client Protection Fund pro hac vice" to be reasonable).

Here, Class Counsel's current costs total ███████. Class Counsel's costs include reasonable out-of-pocket expenditures, which are described in the accompanying declaration. *See* Schalman-Bergen Decl. ¶ 35. The expenses are of the type typically billed by attorneys to paying clients in the marketplace, and include such costs as mediation fees, court costs, copying fees,

delivery costs (including costs for printing and sending Claim Forms to Opt-In Plaintiffs), and computerized legal research. *Id*.

All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Settlement Agreement, Defendant does not object to the request for costs.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order:

1)   Granting final approval of the proposed Settlement Agreement;

2)   Granting final approval of the State Settlement Classes pursuant to Fed. R. Civ. P. 23;

3)   Finally approving David M. Oates, Richard Stapleman, and Jesse Webb as the representatives of the Settlement Classes, and approving a ▮▮▮▮▮ service award to each Plaintiff for their service to the Settlement Class and in exchange for their additional released claims in favor of Defendant;

4)   Approving Berger & Montague, P.C. as Class Counsel for the Settlement Class, and approving Plaintiffs' request for attorneys' fees in the amount of up to one-third (1/3) percent of the Gross Settlement Amount. And approving Class Counsel's out-of-pocket costs, which currently are ▮▮▮▮▮;

5)   Finally approving the Angeion Group, LLC as Settlement Administrator and the costs of settlement administration not to exceed ▮▮▮▮▮;

6)   Finding that the settlement was not covered by the Class Action Fairness Act;

7)   Directing the settlement funds to be distributed in accordance with the terms of the Settlement Agreement; and

8)   Dismissing this class and collective action with prejudice.

Dated: November 21, 2017                    Respectfully submitted,

                                            BERGER & MONTAGUE, P.C.

                                            /s/ Sarah R. Schalman-Bergen
                                            Shanon J. Carson
                                            Sarah R. Schalman-Bergen
                                            Alexandra K. Piazza
                                            Camille Fundora
                                            BERGER & MONTAGUE, P.C.
                                            1622 Locust Street
                                            Philadelphia, PA 19103
                                            Telephone: (215) 875-3000
                                            Facsimile: (215) 875-4604
                                            scarson@bm.net
                                            sschalman-bergen@bm.net
                                            apiazza@bm.net
                                            cfundora@bm.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been filed on the ECF docket and is available for viewing and download on this 21st day of November, 2017.

s/ Sarah R. Schalman-Bergen
Sarah R. Schalman-Bergen